**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JAMES A. RUFO, ) | |
| ) | CASE NO. 1:06 CV 0163 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE LESLEY WELLS |
| ) | |
| JO ANNE B. BARNHART, ) | MAGISTRATE JUDGE VECCHIARELLI |
| Commissioner of Social Security ) | |
| ) | **REPORT & RECOMMENDATION** |
| Defendant. ) | |

Plaintiff James A. Rufo ("Rufo") challenges the final decision of the Commissioner of Social Security, Jo Anne B. Barnhart ("Commissioner"), denying Rufo's claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et se*.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

For the reasons set forth below, the Magistrate Judge recommends the Court AFFIRM the final decision of the Commissioner.

**I. Procedural History**

On September 30, 2002, Rufo filed an application for POD and DIB alleging a disability onset date of June 30, 2002, and claiming he was disabled due to degenerative disc disease with herniation. Rufo's application was denied initially and upon reconsideration. Rufo timely requested an administrative hearing.

On February 15, 2005, Administrative Law Judge Leonard A. Nelson ("ALJ") held a hearing during which Rufo, represented by counsel, testified. Hershel Goren, M.D., testified as the medical expert ("ME"); Barbara Burk testified as the vocational expert ("VE"). On May 26, 2005, the ALJ found Rufo was able to perform a full range of sedentary work, and therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review. Rufo filed an appeal to this Court.

On appeal, Rufo claims the ALJ erred by: (1) failing to evaluate Rufo's claims pursuant to Social Security Ruling ("SSR") 96-7p; (2) disregarding the "Treating Source Rule"; and (3) failing to evaluate Rufo's limitations pursuant to SSR 83-12.

**II. Evidence**

*Personal and Vocational Evidence*

Born on December 14, 1974 and age 30 at the time of his administrative hearing, Rufo is a "younger" person pursuant to 20 C.F.R. § 404.1563(c). Rufo has the equivalent of a high school education and past relevant work as an assembler at a printing company and as a pipefitter/plumber.

*Medical and Evidence*

On June 25, 2002, Rufo reported to James Ohliger, M.D., that he strained his back while

lifting an air conditioner and replacing a toilet. (Tr. 128, 154, 164.) Dr. Ohliger diagnosed a possible herniated disc and lumbosacral sprain and prescribed muscle relaxants, Soma, Celebrex, Medrol, Dosepak, and Vicodin #30. (Tr. 128, 154.)

On June 28, 2002, Rufo returned to Dr. Ohliger for a follow up visit. Dr. Ohliger reported that Rufo had persistent pain and a physical exam revealed, "some improvement," difficulty ambulating with improvement, tenderness in the paravertebral paralumbar muscles and moderate muscle spasms. (Tr. 154.) Rufo's range of motion was diminished to 85 degrees at the lumbar spine. (Tr. 155.) Dr. Ohliger requested physical therapy, an X-ray of the lumbar spine and a follow up visit in one week. (Tr. 154.)

On July 1, 2002, Prasada R. Kandula, M.D., reported that Rufo's X-ray taken on June 28, 2002 revealed no abnormalities in the lumbar spine. "The vertebral body heights and the disc spaces are well preserved." (Tr. 132.)

On July 5, 2002, Rufo visited Rehabilitation Consultants, Inc. to begin physical therapy. (Tr. 152.) The Initial Evaluation report indicated the following: a 5 out of 10 on the Pain Scale, L3-5 paraspinal tenderness, normal posture, decreased strength in right leg and normal strength in the left leg. (Tr. 151.)

On July 10, 2002, Rufo returned to Dr. Ohliger's office complaining that "he was having a lot of pain" and an MRI was scheduled. (Tr. 155.)

On July 11, 2002, Rufo reports improvement in both sitting and posture to a Rehabilitation Consultants, Inc. worker.[1]

On July 16, 2002, Rufo underwent an MRI. (Tr. 129, 155.) On July 17, 2002, F. M.

---

[1] The signature of the Physical Therapist or Physician is illegible. (Tr.148.)

3

Kearney, M.D., analyzed the MRI and reported that the images revealed "degenerative changes in the mid and lower lumbar spine, most severe at the L5-S1 level where there is also asymmetrical protrusion of disc to the left side of the midline.  There is no compromise of exiting nerve roots or posterior neural structures readily evident on this study.  Mild degenerative changes at L3-L4 are also described."  (Tr. 129-130.)

On July 31, 2002, Dr. Ohliger saw Rufo for another visit.  Dr. Ohliger's impressions were "that patient has a chronic pain syndrome along with probable herniated disc with resulting significant pain."  (Tr. 155.)  This was the last time Dr. Ohliger saw Rufo as a patient.  (Tr. 155.)

On August 20, 2002, Rufo reported only slight improvement in his ability to stand or sit for extended periods of time.  Rufo also claimed that his pain had decreased to 3 out of 10 on a pain scale.  The report indicates "no significant change since evaluation" and "very limited relief from modalities."  (Tr. 144.)  This was the last time Rufo attended physical therapy at the referral of Dr. Ohliger, despite being approved for four additional weekly visits through September 21, 2002.  (Tr. 141.)

On August 27, 2002, J. George Dakters, M.D., from Neurosurgical Services, Inc. reported: "originally on a scale of zero to ten, [Rufo's] pain intensity was ten over ten, whereas now it has simmered down to four over ten."  (Tr. 163.)  Dr. Dakters reported that Rufo was unable to resume physical work or stand and sit for long periods of time because it increased his level of pain. Dr. Dakters noted that Rufo "walked with a normal gait, had no motor deficit or sensory loss in lower extremities...lateral bending to the left created a pulling sensation in the right sacroiliac area, and right lateral bending created a deep pain in that same region."  Rufo had a kidney stone removed in 2000 and was seeing a urologist.  (Tr. 163.)

The next day, August 28, 2002, Rufo visited Dr. Ray and reported experiencing lower back pain at a level of four, radiating into his right buttocks, precipitated by sitting, walking and standing, and alleviated by lying down. (Tr. 137.)

On September 6, 2002, Dr. Richard Ray gave Rufo an epidural steroid injection under fluoroscopy. (Tr. 136.)

On September 20, 2002, Dr. Ray performed a caudal block under fluoroscopy on Rufo. (Tr. 135.)

On October 4, 2002, Dr. Dakters refered Rufo for a surgical consultation despite his warning that Rufo's situation was "not a typically surgically remediable problem." Rufo walked with a limp, felt he was not getting any better, had no straight leg raising limitations, and developed pain at full lumbar flexion. Dr. Dakters noted that the therapeutic epidural block did not seem to help Rufo at all. (Tr. 161.)

On October 10, 2002, neurosurgeon Gale Hazen, M.D., reported that Rufo was functioning well that day. He was able to get up easily and walked well with a regular walk, toe walk and heel walk. He had good strength and full back rotations with flexion to almost 80 degrees. Rufo's MRI revealed significant degenerative disk disease, but Dr. Hazen recommended Rufo wait several months "for things to settle down" before pursuing surgery. (Tr. 160.)

On October 17, 2002, Dr. Ohliger completed a teledictation to the Bureau of Disability Determination describing the diagnosis of possible herniated disc and nephrolithiasis. Dr. Ohliger shared his impression that Rufo suffered from chronic pain syndrome along with probable herniated disc resulting in significant pain. Rufo was advised to refrain from working.

(Tr. 154-156.)

On November 5, 2002, Rufo visited Dr. Hazen. Rufo continued to report pain across his back and down into his groin. Dr. Hazen reported that Rufo may require surgery. (Tr. 159.)

On November 20, 2002, Dr. Paul Morton completed a Physical Residual Functional Capacity Assessment form for Rufo, stating that, "MRI findings document the presence of degenerative joint disease in the mid and lower lumbar area, most severe at the L5-S1 level where there is also disc protrusion. At all physical examinations, the claimant has reported pain which prevents work and limits his activities of daily living." Dr. Morton also opined that there was no evidence of neurological deficits because Rufo's gait was normal, and he was able to care for his two children while his wife worked. (Tr. 172-173.)

On January 6, 2003, Dr. Hazen filled out a Medical Proof of Disability form for Rufo in which she described the disabling condition as unrelenting back pain and lumbar degenerative disc disease. Dr. Hazen wrote that Rufo "has medically been unable to work since June '02 and may require surgical intervention." (Tr. 164-165.)

On January 14, 2003, Dr. W. Bingaman from the Cleveland Clinic reported Rufo had a normal gait and normal range of motion, that he experienced pain in his back, buttock and groin, and that he has experienced consistent pain for seven months. The pain increases when Rufo stands, walks or is active and decreases when he lays down. (Tr. 166-169.)

On March 3, 2003, Bradford B. Mullin, M.D., F.A.C.S. wrote a letter to Rufo explaining that he appeared to be an appropriate candidate for disc replacement protocol at L5-S1. Dr. Mullin had reviewed Rufo's MRI from July 16, 2002, but needed additional tests and medical information to verify his eligibility for the procedure. (Tr. 177.)

On June 19, 2003, Dr. Ohliger completed a "Medical Opinion RE: Ability to do work-related activities (Physical)" form. Dr. Ohliger indicated that Rufo was limited to lifting less than ten pounds occasionally or frequently, could stand or walk less than 2 hours in an 8-hour day, and could sit less than 2 hours a day. (Tr. 178.) Dr. Ohliger indicated that Rufo must change positions every five minutes when sitting or standing, and must walk around every 5 minutes for 5 minutes at a time before sitting again. (Tr. 178-79.) Dr. Ohliger also indicated that Rufo was unable to twist, stoop, crouch, or climb ladders and could only occasionally climb stairs. (Tr. 179.) Dr. Ohliger opined that, on average, Rufo would miss more than four days of work per month due to his impairments or treatment. (Tr. 180.)

On September 4, 2003, Kevin A. Rahn, M.D., Rufo's treating orthopedic specialist, recommended a new MRI. During the visit, Dr. Rahn noted Rufo's range of motion in his back and hips was relatively normal, and range of motion in his ankles were normal. (Tr. 221.) Rufo appeared neurologically intact and the reflexes and strength in his extremities were normal. Rufo rated his pain 7 out of 10. Dr. Rahn opined, "I think [Rufo] is definitely a reasonable candidate [for surgery] and may have to have a discogram to verify the L5-S1 is the sole generation of pain." (Tr. 221.)

On September 11, 2003, David B. Janizek performed and reviewed a second MRI that revealed degenerative changes most prominent at the L5-S1 level, a small broad extraforaminal disc protrusion at the L4-5 level, a broad posterior disc protrusion at L5-S1 level, but no secondary nerve root compression. (Tr. 218.)

On September 26, 2003, at Dr. Rahn's recommendation, Rufo underwent a lumbar discography at L3-4, L4-5, and L5-S1 to identify pain responses. Rufo demonstrated discogenic

7

concordant pain at the L5-S1 and L3-4 levels with the L5-S1 level being significantly more severe, rating a 10 out of 10 for pain.  (Tr. 199, 193.)

On October 2, 2003, Dr. Rahn concluded that Rufo would not be a candidate for the artificial disk study because he has multilevel disease.  (Tr. 193.)  Dr. Rahn recommended a different procedure, intradiscal electrothermal procedure, which has a 50% chance of helping Rufo diminish his pain.  Rufo cancelled his next appointment with Dr. Rahn on October 30, 2003.  (Tr. 191.)

On January 11, 2004, Rufo visited the Cleveland Clinic for an initial visit.  (Tr. 120-21.)  Rufo's lower back pain was reported 6 out of 10 and characterized the pain as aching and sharp.  (Tr. 121.)  Ayman Harris Basali, M.D. prescribed 3 lumbar epidural steroid injections and scheduled a follow up visit with Rufo after the injections.  (Tr. 120.)

January 25, 2004, Dr. Rahn replied that he could not fill out a functional capacity assessment for Rufo because he had only seen Rufo once or twice and his notes did not include significant restrictions.  (Tr. 222.)

*Hearing Testimony*

On February 15, 2005, Rufo testified before the ALJ.  (Tr. 230-41.)  Rufo testified that he attended college full time, had classes twice a week, took one internet course, and received A's and B's.  (Tr. 234.)  Rufo explained that he was registered with the special needs office at school, which allows him to get up during class and walk around at will.  The office also provides Rufo with a special chair if needed.  (Tr. 239-240.)  Rufo testified that he read for four hours a day, did some household chores, cooked, attended church services every Sunday, and watched television often.  (Tr. 232.)  He opined that he could walk for fifteen minutes, stand for

fifteen minutes, and sit for thirty minutes. (Tr. 232, 237.) During the hearing, Rufo testified that he researched possible solutions to his back pain on the internet, including research studies for artificial disks. (Tr. 240-241.) The enrollment for one research study in Columbus ended one week prior to Rufo's visit. (Tr. 241.) Rufo was evaluated by Dr. Rahn for another study in Fort Wayne, Indiana; however, Rufo was not eligible for this study because his discogram results showed multiple levels of degeneration and pain. (Tr. 241, 193.)

*Medical Expert Testimony*

The ME testified that Rufo experienced back pain with no radiculopathy (pain that goes down below the knee) and used Listing 1.04. (Tr. 242-243.) The ME stated that standard disc surgery would not be appropriate because it alleviated radiculopathy but does not help patients suffering only from back pain; other operations considered were not proven to benefit the patient at all. (Tr. 243.) The ME concluded that, "the pain will continue, and that either an operation will not be done or the operation, if done, will not relieve the pain ... [Rufo] does not meet or equal listing [1.04], but he will be restricted because of continuing back pain, roughly to a light level with additional restrictions." (Tr. 243-244.)

*Vocational Expert Testimony*

The VE testified that Rufo cannot return to his past relevant work. (Tr. 247.) In response to the ALJ's hypothetical concerning a man with a high school education, chronic back pain, able to lift or carry less than twenty pounds, stand and walk six hours during an eight-hour work day, sit for six hours during an eight-hour work day, limited to simple, unskilled work, no ropes, ladders, scaffolds, and also limited to only occasional climbing, balancing, stooping, crouching, kneeling and crawling, the VE stated that there would be work for such an individual. (Tr. 247-

9

248.) Some of the sedentary jobs would have a sit/stand option, but the VE did not provide a percentage or the number of jobs in the area. (Tr. 248.) The VE also testified that if Rufo could only lift less than 10 pounds, there would be no competitive employment. (Tr. 249.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, which can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Rufo was insured on his alleged disability onset date, June 30, 2002 and remained insured through the date of the ALJ's decision, May 26, 2005. (Tr. 15.) Therefore, in order to be entitled to POD and DIB, Rufo must establish a continuous twelve month period of disability between June 30, 2002 and June 30, 2003. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV.  Summary of Commissioner's Decision

The ALJ found Rufo established a medically determinable, severe impairment, due to lumbar degenerative disc disease, but his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Rufo is unable to perform his

past work activities, but has a Residual Functional Capacity ("RFC") for the full range of sedentary work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Rufo is not disabled.

## V. Standard of Review

The court's review of the Commissioner's decision is limited to determining whether there is "substantial evidence" to support the Commissioner's decision and whether the Commissioner employed proper legal standards in reaching his or her conclusion. Because the petitioner's request for review has been rejected, the decision of the ALJ is the final decision of the Commissioner and is subject to this court's review. Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). If substantial evidence for the Commissioner's decision exists, the Court's "inquiry must terminate" and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Furthermore, if the Commissioner's decision is supported by substantial evidence, the Commissioner's determination must stand regardless of whether the reviewing court would resolve the disputed issues of fact differently. *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

## VI. Analysis

Rufo claims the ALJ erred by: (1) failing to evaluate Rufo's claims pursuant to Social Security Ruling ("SSR") 96-7p; (2) disregarding the "Treating Source Rule"; and (3) failing to

11

evaluate Rufo's limitations pursuant to SSR 83-12. Rufo makes these three arguments under a general argument heading that the ALJ's RFC finding is not supported by substantial evidence. Rufo, however, does not develop this argument in any manner and merely sets forth the clearly established rule that an ALJ's decision must be supported by substantial evidence. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006); *See Erhart v. Sec'y of Health & Human Servs.*, 989 F.2d 534, 537 n.5 (7th Cir. 1992) (applying waiver rule because judges need not devote time to "discussion of argument, raised if at all, 'in a very opaque manner.'")

It is not the ALJ's burden to demonstrate that Rufo can perform a full range of sedentary work. A claimant does not establish a lack of substantial evidence by merely pointing to evidence of record that supports his or her position and contradicts the finding of the ALJ, as the substantial evidence standard is such that it is possible for substantial evidence to both support an ALJ's denial of benefits as well as an award in the same case. *See, e.g., Kirby v. Comm'r of Soc. Sec.*, No. 01-5966, 2002 WL 1315617, at *1 (6th Cir. June 14, 2002) (Commissioner's decision must be upheld if substantial evidence supports it regardless of whether substantial evidence support's claimant's position); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (noting a court must uphold the decision of the Commissioner even when substantial evidence exists to support both the Commissioner and the claimant); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) (noting that substantial evidence can exist to support and detract from the ALJ's

decision). Rather a claimant such as Rufo must demonstrate that there is a *lack* of substantial evidence in the record to support the ALJ's conclusion. Instead of drawing the Court's attention to the alleged dearth of substantial evidence, Rufo develops three distinct arguments that assert the ALJ failed to employ the proper procedures and legal standards. Thus, Rufo's failure to develop the argument that the ALJ's opinion is not based on substantial evidence renders the argument waived. Nevertheless, the Court will discuss Rufo's other three assigned errors in turn.

### *Disabling Pain and Credibility*

Rufo argues that SSR 96-7p sets forth the standard for evaluating a claimant's symptoms, including allegations of pain, but that the ALJ's analysis of the medical evidence "fell short of the required considerations of SSR 96-7p and is against the substantial evidence of record." (Pl.'s Br. at 12.) It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). In evaluating whether a claimant is disabled by pain, the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition, and (2), whether the objective medical evidence confirms the alleged severity of pain or whether the objective medical evidence is so severe that it could reasonably be expected to produce disabling pain. *Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986); 20 C.F.R. § 404.1529(b),(c). For the sake of clarity, this test will be referred to as the "*Duncan* test."

In this case, the ALJ found that objective medical evidence exists to support an underlying medical condition of degenerative disc disease with herniation at L5-S1, thereby satisfying the first prong of the *Duncan* test. (Tr. 16.) Usually, the second part of the Duncan test can be satisfied by objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, and sensory and motor disruption. *See, e.g., Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1370 (6th Cir. 1991). Whether Rufo is disabled by his symptoms is a determination reserved to the ALJ.

Here, the ALJ found that Rufo's description of his pain "exceeds medical substantiation, is not consistent with other evidence and is not credible." (Tr. 19.) The ALJ points to Rufo's full range of motion, normal gait, intact sensation, normal reflexes, intact neurological functions and 5/5 strength in all of his extremities. (Tr. 17-18.) Thus, the ALJ found that the objective medical evidence did not support a disabling level of pain.

In making this determination, the ALJ must consider other factors that may or may not corroborate the claimant's alleged symptoms (the "Other Factors"). *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Felinsky*, 35 F.3d at 1039; *Johnson v. Comm'r of Soc. Sec.*, 2000 WL 332059, at *3-4 (6th Cir. March 22, 2000); 20 C.F.R. § 404.1529(c)(2). The Other Factors include: statements from the plaintiff and the plaintiff's treating and examining physicians; diagnosis; efforts to work; plaintiff's daily activities; the location, duration, frequency and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, plaintiff receives to relieve pain; measures used by the plaintiff to relieve symptoms; and any other factors concerning functional limitations due to symptoms. *See*

*Felinsky*, 35 F.3d at 1039-40; 20 C.F.R. §§ 404.1529(a), (c)(3), 416.929(a), (c)(3). Credibility becomes a particularly important consideration at this step, and the court will generally defer to the ALJ's credibility assessment. *See Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

Although the ALJ's opinion could have benefitted from a more thorough analysis of the Other Factors, the ALJ adequately considered the factors and concluded that Rufo's allegations of disabling symptoms were not credible. (Tr. 19.) An ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005). The ALJ noted that Rufo cared for his children, fixed simple meals, did light household chores, drove, shopped for groceries, used a computer, read, cared for his own personal needs and attended school full time. (Tr. 18-19.) The ALJ also noted that Rufo's treating physician, Dr. Rahn, reported on January 25, 2004 that Rufo did not have any significant restrictions. (Tr. 18, 221-222.) The ALJ's opinion specifically mentions that Rufo's level of pain decreased to 3 on a scale of 10 after physical therapy sessions, but that Rufo discontinued the sessions despite being authorized for four more sessions. (Tr. 17.) Lastly, the ALJ pointed to Rufo's statements that he was only "limited a little" when it came to lifting or carrying groceries, climbing one flight of stairs, and walking one block. (Tr. 18, 212.)

Rufo argues that the ALJ's analysis is insufficient and avers that every physician in the record believed Rufo's pain complaints. This argument misconstrues the ALJ's finding. By finding Rufo's complaints not credible, the ALJ merely found that Rufo's symptomatic

15

allegations, including pain, were not as severe as alleged; the ALJ did not find that Rufo was pain free. As the ALJ alluded, and as confirmed by the Court's review of the medical records, the medical opinions as to the severity of Rufo's symptoms vary significantly.

Based upon the above facts, the ALJ's credibility analysis is satisfactory, and the ALJ did not err.

### *Treating Physician's Opinion*

Rufo argues that the ALL improperly rejected the opinion of Dr. Ohliger, a treating physician. (Pl.'s Br. at 15.) Generally, the opinion of treating physicians is given greater weight than those of physicians hired by the Commissioner. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983). However, in order for the treating physician's opinion to be entitled to substantial weight, the opinion must be more than a conclusory statement and must be supported by clinical or diagnostic findings. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). Where no such medical documentation is presented and there is no explanation of a nexus between the conclusion of disability and physical findings, the ALJ may choose to disregard the treating physician's opinion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 212 (6th Cir. 1986). The ALJ also must consider factors such as the "length;" "nature and extent of the treatment relationship;" the physician's specialty; and the "consistency" and "supportability" of the physician's opinion. *See* 20 C.F.R. §§ 404.1527(a)-(d), 416.927(a)-(d). The ALJ can disregard the opinion of a treating physician that is not supported by adequate medical data, including medical signs and laboratory evidence. *Id.* The ALJ need not credit a treating physician's conclusion which does not contain substantiating medical data. *See Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir.

1987). An ALJ is not bound by the opinions of a claimant's treating physicians, but must set forth some basis for rejecting certain opinions. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 320-21 (6th Cir. 1987)..

Rufo claims that Dr. Ohliger was his "primary treating physician during the relevant time period" and "treated [Rufo] immediately following his back injury" and "oversaw x-rays, an MRI, and physical therapy." (Pl.'s Br. at 15.) However, Dr. Ohliger only treated Rufo during a five week span from June 25, 2002 to July 31, 2002. (Tr. 128, 155.) Two and a half months later, Dr. Ohliger submitted a Teledictation Report to the Ohio Rehabilitation Services Commission summarizing his impressions that Rufo has some degenerative changes in the mid and lower lumbar spine and suspected a herniated disc with chronic pain. (Tr. 155.) The next report of Dr. Ohliger, which contains the severe limitations on which Ohliger relies, was not created until almost one year *after* Dr. Ohliger last saw Rufo. The report states that Rufo: was limited to lifting and carrying objects less weighing less than 10 pounds; could stand, walk, and sit for only 5 minutes at one time; was limited in his ability to reach, handle, push and pull objects; was able to climb stairs occasionally; and could never twist, bend, crouch or climb ladder. (Tr. 178-180.)

In his decision, the ALJ summarized Dr. Ohliger's reports and found them "very restrictive and not supported by the evidence of record." (Tr. 17-18.) The ALJ cited numerous physical examinations performed by other physicians that contradict the severity of Dr. Ohliger's opinion. These examinations report that Rufo presented: normal gait, normal posture, and full range of motion and reflexes; no motor deficits, spasms or negative straight leg raises; and considerable upper body bulk with no sign of diminished strength in extremities. (Tr. 17-19.)

17

Thus, the ALJ did not err by rejecting Dr. Ohliger's opinion and sufficiently set forth the reasons his reasons for doing so.

***Evaluation Pursuant to SSR 83-12***

Rufo argues that "if the ALJ had properly analyzed [Rufo's] credibility and had properly considered the opinion of [Rufo's] treating physician, SSR 83-12 would have required a finding of disability based on [Rufo's] need to alternate at will from a sitting position to a standing position, and his absence of transferable skills." (Pl.'s Br. at 17.)  SSR 83-12 states, "[i]n some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing ... [s]uch an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work ... or the prolonged standing or walking contemplated for most light work."

However, SSR 83-12 is inapplicable because the ALJ did not find that Rufo must be allowed to alternate between sitting and standing at will.  Rufo's argument is based solely on his other two arguments that this Court rejected.  (Pl.'s Br. at 16-17.)  As discussed above, the ALJ did not find Rufo's claims as to his limitations credible, and the ALJ deemed Dr. Ohliger's opinion inconsistent with the rest of the evidence in the record.  As a result, Rufo's reliance upon testimony that explicitly was rejected by the ALJ is misplaced.  Rufo points to no other evidence requiring him to alternate positions.  Because the ALJ found that Rufo did not require a sit-stand option, there was no need for the ALJ to conduct an analysis pursuant to SSR 83-12.  The ALJ did not err by failing to find that Rufo did not need to alternate between sitting and standing; therefore, Rufo's last assignment of error is not well taken.

18

## VII.  Decision

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner should be AFFIRMED and judgment entered in favor or the defendant.


                                                s/ *Nancy A. Vecchiarelli*
                                                NANCY A. VECCHIARELLI
                                                U.S. MAGISTRATE JUDGE

Date: February 26, 2007.


### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.**  *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).**  *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**